**IN THE COURT OF APPEALS OF IOWA**

No. 22-0674
Filed March 8, 2023

**DION LEE JOHNSON,**
     Petitioner-Appellant,

**vs.**

**SHELBY ANN MADDY, n/k/a SHELBY ANN HAGER,**
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Wapello County, Lucy J. Gamon,

Judge.


     Dion Johnson appeals the physical-care provision of the court's decree

establishing paternity, custody, visitation, and support of his child with Shelby

Maddy. **AFFIRMED.**


     Cynthia D. Hucks of Box & Box Attorneys at Law, Ottumwa, for appellant.

     Bryan J. Goldsmith and Carly M. Schomaker of Gaumer, Emanuel,

Carpenter & Goldsmith, P.C., Ottumwa, for appellee.


     Considered by Bower, C.J., and Badding and Buller, JJ.

**BOWER, Chief Judge.**

Dion Johnson and Shelby Maddy (now Hager) have one child together, L.J.J., born in March 2017; they were never married.[1] Dion asserts the court should not have placed the child in Shelby's physical care, arguing that decision is contrary to the child's health and safety due to Shelby's husband's (Mikel's) marijuana usage and temper.

We review paternity actions, which are tried in equity, de novo. *See* Iowa R. App. P. 6.907. We give weight to the district court's findings, especially its credibility assessments, but are not bound by them. Iowa R. App. P. 6.904(3)(g); *see McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010) ("[W]e recognize that the district court was able to listen to and observe the parties and witnesses."). Our "first and governing consideration" in a child custody case "is the best interests of the child." Iowa R. App. P. 6.904(3)(o).

The trial court carefully considered the pertinent factors and all the circumstances relevant to making an appropriate custodial determination. *See* Iowa Code § 600B.40(2) (2019) (noting section 598.41 shall apply to "determining the visitation or custody arrangements of a child born out of wedlock"); *In re Marriage of Hansen*, 733 N.W.2d 683, 697 (Iowa 2007) (holding the factors enumerated in section 598.41(3) are relevant in making a physical-care determination).

---

[1] Because the trial court referred to the parents by their first names, we will too.

In reviewing the evidence, the district court considered Dion's concerns about Mikel's marijuana usage and reports he physically abused Shelby in 2020 before they temporarily separated. The court observed:

> Since November of 2020, a little more than a year ago, Shelby has made impressive strides towards developing a positive and stable life. She obtained a full-time job that she likes and received two promotions. She mostly stopped drinking alcohol and persuaded Mikel to completely stop drinking as well. She insisted that she and Mikel obtain couples counseling together, which they have done. Shelby and Mikel now talk through their problems instead of screaming at each other and calling names.
> Shelby took the initiative to prepare a family budget which she discusses with Mikel each week. These discussions reduce arguments over finances. Shelby and Mikel now have functional vehicles. They are able to afford weekly "date nights" and monthly family outings.
> Shelby was able to achieve the personal goal of losing weight, and she feels better and in more control of her life. In her testimony, it was clear that she takes pride in her personal successes over the past year. She believes that she and Mikel have both matured a lot, which has been positive for their cohesiveness as a family.

The court found nothing in the record controverted Shelby's testimony there has not been any physical violence since their 2020 separation. The court acknowledged Mikel's admitted marijuana usage,[2] but concluded his presence in the home did not pose a danger to the child. The court noted it had "concerns about the stability and wholesomeness of each home environment." The court gave credence to Shelby's testimony that her children are her first priority and she would remove them from Mikel if necessary.[3]

---

[2] The court stated Mikel's medical marijuana card "would not allow Mikel to smoke marijuana cigarettes legally in the State of Iowa." It also noted Dion and his girlfriend Mikalya also smoke or have smoked marijuana.
[3] In addition to L.J.J., Shelby and Mikel have a child together.

In the end, the court found L.J.J. was loved, well cared-for, healthy, and sociable. The court also found both Dion and Shelby capable and loving parents, though it noted Dion had never been solely responsible for caring for L.J.J. The court concluded:

> On balance, the court finds that it is in L.J.J.'s best interest for Shelby to be the primary caretaker for L.J.J., and for Dion to have regular visitation. The court makes this determination for the following reasons: Shelby has been the primary caretaker for L.J.J. since his birth. Shelby has excellent parenting skills, to which numerous witnesses have testified, and which Dion himself acknowledges. Shelby may have been slow to warm up to Dion as L.J.J.'s father, but once the court order was entered, Shelby has followed it scrupulously. She has taken care to inform Dion and/or his significant other, Mikayla, regarding all medical appointments and all educational information for L.J.J. She is committed to supporting Dion's role as L.J.J.'s father. Shelby is sensitive to L.J.J.'s strong need for structure and routine, and makes sure she provides that for him in her home.
>
> Dion is also a very good parent; he just has never been the primary parent for L.J.J. He has tended to allow his extended family to take on some of the parenting duties for L.J.J., which is fine. Dion was slow to assert his rights as a parent, but has certainly done a fine job of parenting since then. Dion has simply not shown the consistent dedication and interest in parenting L.J.J. that Shelby has shown. Dion has also shown somewhat less stability than Shelby in that he is not married [and] . . . . [the] home Dion lives in is cramped for space, and will become increasingly so as L.J.J. grows up.[4] Dion's dedication to structure and routine is somewhat less than that demonstrated by Shelby, and this may become an increasingly significant factor as L.J.J. enters school.
>
> In recognition that Dion has done a very admirable job of parenting since the custodial order was entered, and because L.J.J. has become used to a split schedule, the court finds that the parties should alternate care on a weekly basis for L.J.J. during twelve weeks of summer vacation.

On our de novo review, we discern no reason to interfere with the court's custody determination. See Iowa Ct. R. 21.26(1)(d). Both parents love their child

---

[4] Dion and Mikayla's two children live with them in their two-bedroom home, and L.J.J. shares a room with the two other children when in Dion's care.

and can provide adequate care. The district court appropriately gave "weight to the parent who has acted as the child's primary caretaker in the past." *See Ruden v. Peach*, 904 N.W.2d 410, 414–15 (Iowa Ct. App. 2017); *accord Hansen*, 733 N.W.2d at 696 ("[S]tability and continuity of caregiving are important factors that must be considered in custody and care decisions."). On our de novo review, we affirm.

**AFFIRMED.**